# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. CR411-349 |
| | ) | |
| ANTWAN J. CLARK | ) | |

## **REPORT AND RECOMMENDATION**

Antwan Clark seeks to suppress both the evidence seized during the execution of a state search warrant at his residence and the statements he made following his arrest. (Docs. 17 & 24.) His motions are without merit and should be denied.

### A. The Warrant

On June 11, 2011, a local police narcotics officer applied for a warrant to search a residence located at 2220 Greenwood Street in Savannah, Georgia. (Doc. 17-1.) The drug and firearms evidence seized pursuant to that warrant form the basis for Clark's current prosecution in this Court. The primary focus of Clark's suppression motion is on the

warrant's "no knock" provision. (*Id.* at 14.) He argues that the "affidavit is legally insufficient to show that the police had a reasonable suspicion of danger to themselves at the time of warrant execution" and, therefore, that the state judge erred in authorizing a no-knock entry of his residence. (Doc. 17 at 11.)

Even if Clark is correct on this point (and he is not[1]), any error by the issuing magistrate in approving a no-knock entry furnishes no ground for suppression of the evidence seized pursuant to the search warrant. In *Hudson v. Michigan*, 547 U.S. 586 (2006), the Supreme Court held that a violation of the Fourth Amendment requirement that the police knock and announce their presence before entering a residence to execute a search warrant does not require suppression of the evidence seized under

---

[1] The affidavit established that two of the individuals suspected of using and dealing drugs at the residence had criminal records for possession of firearms as felons and during the commission of other crimes. (Doc. 17-1 at 11.) Not only was Clark on probation for a drug and gun crime at the time he was convicted of the aforementioned firearms offenses (*id.*), he was on probation for a gun crime at the time the police applied for the search warrant. (*Id.*) The law requires only that the police reasonably suspect a threat to their physical safety to justify a no-knock entry. *Hudson v. Michigan*, 547 U.S. 586, 589-90 (2006). Here, that assessment was made by a state magistrate, whose determination is entitled to "great deference." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Given the inherently violent nature of the drug trade and the suspects' history of using firearms in connection with criminal activity, the state magistrate had an ample basis for concluding that the police were justified in entering the premises without first announcing their presence.

2

that warrant. During argument on his motion, Clark's counsel endeavored to distinguish *Hudson* on the ground that here, unlike in that case, the officers sought judicial approval for a no-knock entry rather than acting on their own authority. But this is a distinction without a difference. The point of the *Hudson* decision is that the purposes that undergird the exclusionary rule are not served by suppressing evidence simply because the officers neglect to knock and announce their entry. That rationale applies whether officers act on their own initiative or first seek judicial approval for such an entry. A contrary interpretation of *Hudson* would create a perverse incentive for the police to ignore the Fourth Amendment's "strong preference" for seeking judicial approval before conducting a search, *Illinois v. Gates*, 462 U.S. 213, 236 (1983), for under Clark's view, the police would face a greater of a risk of suppression if they elected to repair to a magistrate for a no-knock warrant than if they declined to do so. Such a result runs counter to the entire thrust of the Supreme Court's Fourth Amendment jurisprudence. *See id.* (the purpose for giving deference to a magistrate's probable cause assessments is to encourage resort to the warrant process by police officers);

*Massachusetts v. Upton*, 466 U.S. 727, 733 (1984) (same); *see also United States v. Biglow*, 562 F.3d 1272, 1282 (10th Cir. 2009) (courts should never "furnish police with the perverse incentive to forgo the warrant process").

Clark never argues, point blank, that there was no probable cause for the issuance of the warrant. But he does reference a minor misstatement in the warrant affidavit as to his criminal history, and he suggests that the affidavit failed to set forth any factual basis for the informant's claim that drugs were "being sold"[2] at his residence. (Doc. 17 at 3.) This deficiency, he claims, rendered the informant's tip "completely insignificant." (*Id.* at 9.) As to the first point, Clark does not contend that the factual inaccuracy as to his criminal record was made "intentionally, or with reckless disregard for the truth," *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), or that the misstatement "was necessary to a finding of probable cause." *Id.* As Clark neither challenges the agent's veracity nor asserts that the error constituted a

---

[2] Clark never argues that there was insufficient probable cause to believe that evidence of drug *possession* would be located at his residence. The Court notes that the search warrant found probable cause to believe that drugs were both being distributed and *possessed* at the residence. (Doc. 17-1 at 16.)

4

material misstatement, he was not entitled to an evidentiary hearing and the Court declined his invitation to conduct one.

And there is simply no merit to Clark's additional argument that the affidavit's failure to set forth the factual basis for the informant's claim (that drugs were being sold at his residence) deprives that information of any value in the probable cause analysis. Some two decades ago the Supreme Court rejected the notion that the twin considerations for gauging the value of an informant's tip -- his reliability and the basis of his knowledge -- "should be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (abandoning the "two-prong test" of the *Aguilar-Spinelli* line of cases in favor of a "totality-of-the-circumstances approach" in assessing probable cause). *Gates* specifically held that "a deficiency [as to one of these considerations] may be compensated for, in determining the overall reliability of the tip, by a strong showing as to the other . . . ." *Id.* at 233. Thus, where "a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set

forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Id.* That is precisely the situation we have here. The informant who advised the police that drugs were being sold at Clark's residence was a person of proven reliability, whose information had led to numerous arrests and seizures of drugs and other evidence. (Doc. 17-1 at 6.) Indeed, his reliability had been established "[i]n all cases" in which he had been utilized as an informant. (*Id.*) Thus, the informant's exceptional reliability compensated for the affidavit's failure to set forth the basis of his knowledge. Clark's assertion that the informant's tip "is completely insignificant" and can "play[] no factor in the probable cause determination" is simply wrong. (Doc. 17 at 9.)

The informant advised the police that large amounts of drugs were being sold from a particular residence by a person known as "G" (later confirmed to be Clark, who listed the residence as his parole release address), pointed out the residence, and stated that "G" often sold "Kush" marijuana there. During two trash pulls at the residence investigators found both cocaine and marijuana residue, "Kush true blunt wrappers,"

loose tobacco shavings,[3] and numerous plastic baggies of the type used to distribute drugs. (Doc. 17-1 at 7-9.) Surveillance and background checks confirmed that various individuals with criminal records frequented the residence. (*Id.* at 10-12.) Clearly, the state magistrate had a substantial basis for finding probable cause.

**B. Statements**

After encountering Clark in his residence, agents placed him under arrest, advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and secured incriminating statements from him. He now seeks to suppress those statements on the ground that they are the product of the illegal search (doc. 17 at 11), and because the agents made "no specific request that he waive his rights and agree to speak" before questioning him. (Doc. 24 at 2.) Clark's statements were not the product of an illegal search, as the warrant-based search was entirely proper. His second point, that the police were required to obtain a waiver of his *Miranda* rights before commencing interrogation, rests on a legal doctrine that has been squarely rejected by the Supreme Court. In

---

[3] In the drug trade, tobacco is often hollowed out of cigars, discarded, and replaced with marijuana. (Doc. 17-1 at 8.)

*Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250 (2010), the Court made clear that "a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Id.* at 2264. Thus, the police were not required to obtain an explicit *Miranda* waiver from Clark before interrogating him.

## CONCLUSION

Clark has shown no grounds for the suppression of the evidence seized under the warrant or the statements he made during police interrogation after he was taken into custody. His motions to suppress (docs. 17 & 24), therefore, should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 18TH day of June, 2012.

/s/ M. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA